### SHADLETSKY v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Term. June 23, 1904.)

1. CARRIERS—INJURY TO PASSENGER—ACTION—INSTRUCTIONS.

A cripple, on entering a street car, set down one of his crutches and grasped the jamb of the car door to. swing himself into a seat, and the driver closed the door so forcibly as to injure one of the cripple's fingers. There was nothing in the appearance of the passenger to apprise the driver of the car of the manner in which the passenger would attempt to take his seat. In an action for injuries, the court instructed that defendant owed plaintiff a duty, as a common carrier, to see that he got on the car with safety, after the car had been stopped to receive him as a passenger. *Held*, that the instruction was erroneous, as imposing on defendant not merely the duty of affording the passenger a reasonable opportunity to get on the car, but making it an insurer of the safety of the passenger until he had taken his seat.

2. SAME—CONTRIBUTORY NEGLIGENCE.

The passenger was not guilty of contributory negligence.

3. SAME—ACTION—EVIDENCE—RECORD OF ACCIDENT.

In an action against a street railroad company for injuries sustained by a passenger, it was error to strike out the evidence of defendant to the effect that it had no record of the accident.

Appeal from Municipal Court, Borough of Manhattan, Thirteenth District.

Action by Pincus Shadletsky against the New York City Railway Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and SCOTT, JJ.

Henry W. Goddard and William E. Weaver, for appellant.

Morris Mayers, for respondent.

MacLEAN, J. The defendant's westerly bound horse car was stopped at Rutgers street to receive passengers, for whom the driver opened the front door, and among whom was the plaintiff, who, because of something peculiar in his infirmity, or from habit, was accustomed to seat himself in cars by facing the seat, putting down one of his crutches, taking hold of something firm, and then swinging around to let himself into the seat. There was nothing apparently in his appearance, nor did he say anything, to apprise the driver of this unusual manner of taking a seat. In this instance, and after he was inside the car, two women moved down to give him the corner seat, to take which he set down one of his crutches, and grasped the jamb just before the driver closed the door; closing it so forcefully that the end of one of his fingers had to be taken off. The care which he observed in doing this was exhibited when he was asked: "In what direction were you looking as you sat down?" and he replied, "I do not have to look. I am a cripple." Furthermore, to the question, "You did not look where you put your hand when you sat down—is that right?" he said, "I do not have to look. I am a cripple. All that is necessary for me to do is to sit down, and sit in one place." No evidence relating to the accident was submitted for the defendant, its counsel stating that it had neither record nor information of the alleged occurrence. The learned justice, in his charge, told the jury there were two questions to consider: First, was the plaintiff free from negligence? and, next, was the defendant guilty of negligence?—both of which were statements he accompanied with remarks, and then, in conclusion, said:

"I charge you this as a proposition of law:  *  *  *  That the defendant owed him a duty, as a common carrier of passengers, to see that he got on the car with safety; and, if they failed to discharge their duty in that respect, then they were guilty of negligence, for which they were liable."

When defendant's counsel excepted to this statement, the court added that it was "a duty that they owed him that they should see that he got on the car with safety after they had stopped the car to receive him as a passenger," to which latter the defendant's counsel also excepted. The duty implied by this part of the charge is more than that legally imposed upon the carrier, for, in the connection in which it was given, it placed upon the defendant not merely the duty of affording the intended passenger a reasonable opportunity to get upon the conveyance before starting, but also made the carrier an insurer of the safety of the passenger until he actually had taken his seat. The accident happened in March, when the passengers required and expected, for their comfort, the front door would be closed by

the driver, who could have had no reason to expect that a passenger once within his vehicle would afterwards place his hand in such a dangerous place. It is not shown whether the driver looked around before he closed the door. If he was careless in not so doing, what was the conduct of the plaintiff? The judgment should be reversed.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.

SCOTT, J. I agree with Mr. Justice MacLEAN that the court, in its charge, overstated the extent of the defendant's obligation to its passengers. I also think that the justice committed an error, calculated to prejudice the defendant, in striking out the evidence that it had no record of the accident. For these errors, the judgment must, of course, be reversed. But I am not prepared to concur in the suggestion that, upon the evidence, the plaintiff stood convicted of contributory negligence. Taking his obvious and apparent infirmity into consideration, that, I think, was a question of fact for the jury.

FREEDMAN, P. J. I concur in reversing the judgment and ordering a new trial, with costs to appellant to abide the event, for the reasons stated in the opinion of Mr. Justice SCOTT.